**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

Nikema Adger,
Eliezar Mendez,
Richard Legree,
Jamar Myers,
Shalea Holland,
Courtney Flamer,
TaHira Harper,                                  Civil Action No.
Heather Fleming,                                4:19-cv-00599-RWS-CAN
Anwar Bilal,
David Dillard,
Rita Brown,
Eugenia McBride,
Lalisha Barrow,
Champaine Echols,
Darla Norman,
And
Jasmyn Roberts

Plaintiffs

                                                Amended Complaint

v.                                              and;

Experian Information Solutions, Inc.            Demand for Jury Trial

Defendant


**<u>AMENDED COMPLAINT</u>**


NOW COME Plaintiffs, Nikema Adger, Nikema Adger,  Eliezar Mendez, Richard Legree,

Jamar Myers, Shalea Holland,  Courtney Flamer,  TaHira Harper,  Heather Fleming,  Anwar Bilal,

David Dillard, Rita Brown, Eugenia McBride, Lalisha Barrow, Champaine Echols, Darla Norman,

and Jasmyn Roberts, (hereafter the "Plaintiffs") by and through undersigned Counsel, whom through their amended complaint against the Defendant allege the following:

## PRELIMINARY STATEMENT

1.      This is an action for actual, statutory, and punitive damages, costs, and Attorneys' fees brought pursuant to 15 U.S.C. §1681, et seq.

## JURISIDICTION AND VENUE

2.      Jurisdiction of this Court is conferred by 15 U.S.C. §1681(p), 15 U.S.C. §1692k(d), and 28 U.S.C. §1331.

3.      Venue in this District is appropriate under 28 U.S.C. §1391(b)(1) because the Defendant in this matter resides in the state of Texas as defined under 28 U.S.C. §1391. Furthermore, Experian Information Solutions, Inc.'s main office, from which the underlying disputes were processed, is in Allen, Texas, which is in the Eastern District of Texas.

## PARTIES

4.      Plaintiffs are natural persons and citizens of the United States of America. Plaintiffs are each a "consumer" as that term is defined by 15 U.S.C. §1681a(c) and 15 U.S.C. §1692a (3).

5.      Defendant Experian Information Solutions, Inc., (hereafter EXPERIAN) is a foreign For-Profit Corporation registered to do business and doing business in Texas. Defendant is a "consumer reporting agency", as defined by 15 U.S.C §1681a(f), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

6.      Defendant EXPERIAN has its corporate headquarters and dispute department in Allen, Texas. Allen, Texas is in the Eastern District of Texas, Sherman County Division.

2

**FACTUAL ALLEGATIONS**

7.      Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

8      EXPERIAN did not follow reasonable procedures to assure maximum possible accuracy and has been reporting false and inaccurate information even after it has known or should have known the information was incorrect.

**PLAINTIFFS' DISPUTE**

9.      Plaintiffs disputed information regarding their Verizon accounts with and through EXPERIAN on the following dates:

a)      Nikema Adger disputed their account #5673 on 05/04/2018;

b)      Nikema Adger disputed their account #6285 on 05/04/2018;

c)      Eliezar Mendez disputed their account #4169 on 10/05/2017;

d)      Richard Legree disputed their account #0100 on 10/23/2017;

e)      Jamar Myers disputed their account #6412 on 10/13/2017;

f)      Shalea Holland disputed their account #1129 on 07/27/2017;

g)      Courtney Flamer disputed their account #4607 on 10/04/2017;

h)      TaHira Harper disputed their account #5011 on 10/19/2017;

i)      Heather Fleming disputed their account #0516 on 10/27/2017;

j)      Anwar Bilal disputed their account #4236 on 12/18/2017;

k)      David Dillard disputed their account #4229 on 12/08/2017;

l)      Rita Brown disputed their account #0734 on 01/29/2017;

m)      Eugenia McBride disputed their account #4424 on 06/07/2018;

n)      Lalisha Barrow disputed their account #8620 on 08/24/2017;

o)      Champaine Echols disputed their account #2473 on 06/25/2018;

p)      Darla Norman disputed their account #9483 on 09/26/2017;

q)      Jasmyn Roberts disputed their account #3149 on 07/05/2018.

Plaintiffs disputed the inaccurate "Date of Status" and "First Reported/Reported Since" dates that were being reported on their EXPERIAN credit reports. Verizon and EXPERIAN did not provide a good faith investigation into the disputed accounts as required by the Fair Credit Reporting Act.  It should be noted that EXPERIAN uses the terms "Reported Since" and "First Reported" interchangeably on its reports, depending on whether they are obtained online or through the mail. Therefore, "Reported Since" and "First Reported" will be used interchangeably throughout this Complaint to refer to the same data field in Plaintiffs' Experian credit report.

10.      The Plaintiffs obtained new credit reports displaying the results of their disputes of their Verizon accounts on the following dates:

a)      Nikema Adger on 06/22/2018;

b)      Nikema Adger on 06/22/2018;

c)      Eliezar Mendez on 10/20/2017;

d)      Richard Legree on 11/15/2017;

e)      Jamar Myers on 11/01/2017;

f)      Shalea Holland on 08/22/2017;

g)      Courtney Flamer on 10/16/2017;

h)      TaHira Harper on 12/04/2017;

i)      Heather Fleming on 12/15/2017;

j)      Anwar Bilal on 02/19/2018;

k)      David Dillard on 01/24/2018;

l)      Rita Brown on 03/17/2018;

m)      Eugenia McBride on 07/27/2018;

n)      Lalisha Barrow on 09/18/2018;

o)      Champaine Echols on 10/28/2018;

p)      Darla Norman on 10/19/2017;

q)      Jasmyn Roberts on 11/05/2018.

11.      The Plaintiffs received their results on the dates listed above in the immediately preceding paragraph and not only did Verizon and EXPERIAN not correct, modify, or delete the disputed information on Plaintiffs' Experian Credit Reports, but they changed the "Date of Status" and the "First Reported" dates due to Plaintiffs' disputes. The changes for the Plaintiffs were as follows:

a)      Nikema Adger dispute results showed their Date of Status dates changed from 09/2016 to 08/2016 and their First Reported dates changed from 05/2015 to 08/2016;

b)      Nikema Adger dispute results showed their Date of Status dates changed from 04/2017 to 05/2017;

c)      Eliezar Mendez dispute results showed their Date of Status dates changed from 08/2016 to 10/2017 and their First Reported dates changed from 07/2016 to 10/2017;

d)      Richard Legree dispute results showed their Date of Status dates changed from 04/2017 to 10/2017 and their First Reported dates changed from 04/2017 to 10/2017;

e)       Jamar Myers dispute results showed their Date of Status dates changed from 11/2016 to 10/2017 and their First Reported dates changed from 10/2016 to 10/2017;

f)      Shalea Holland dispute results showed their Date of Status dates changed from 08/2016 to 07/2017 and their First Reported dates changed from 08/2016 to 07/2017;

g)      Courtney Flamer dispute results showed their Date of Status dates changed from 02/2017 to 10/2017 and their First Reported dates changed from 02/2017 to 10/2017;

h)      TaHira Harper dispute results showed their Date of Status dates changed from 12/2016 to 11/2017 and their First Reported dates changed from 12/2016 to 11/2017;

i)      Heather Fleming dispute results showed their Date of Status dates changed from 10/2017 to 11/2017 and their First Reported dates changed from 02/2016 to 11/2017;

j)      Anwar Bilal dispute results showed their Date of Status dates changed from 11/2016 to 01/2018 and their First Reported dates changed from 07/2014 to 01/2018;

k)      David Dillard dispute results showed their Date of Status dates changed from 05/2017 to 01/2018 and their First Reported dates changed from 05/2017 to 12/2017;

l)      Rita Brown dispute results showed their Date of Status dates changed from 11/2017 to 12/2017 and their First Reported dates changed from 11/2017 to 12/2017;

m)      Eugenia McBride dispute results showed their Date of Status dates changed from 11/2017 to 01/2018 and their First Reported dates changed from 11/2017 to 01/2018;

n)       Lalisha Barrow dispute results showed their Date of Status dates changed from 03/2017 to 08/2017 and their First Reported dates changed from 03/2017 to 08/2017;

o)      Champaine Echols dispute results showed their Date of Status dates changed from 02/2018 to 04/2018 and their First Reported dates changed from 02/2018 to 03/2018;

p)      Darla Normans dispute results showed their Date of Status changed from 03/2017 to 09/2017 and their First Reported dates changed from 03/2017 to 09/2017;

q)      Jasmyn Roberts dispute results showed their Date of Status changed from 01/2018 to 02/2018 and their First Reported date changed from 12/2017 to 01/2018.

Verizon is changing dates that should not be changed and EXPERIAN is allowing Verizon to change dates based on Plaintiffs' statutory right to dispute inaccurate credit information. Verizon and EXPERIAN are penalizing Plaintiffs for exercising their statutory right to dispute inaccurate information on their credit reports. Verizon and EXPERIAN are re-aging Plaintiffs' Verizon accounts with every dispute.

12.     EXPERIAN did not provide a good faith investigation into the Verizon accounts of the Plaintiffs. These accounts are the following:

a)      Nikema Adger account #5673;

b)      Nikema Adger account #6285;

c)      Eliezar Mendez account #4169;

d)      Richard Legree account #0100;

e)      Jamar Myers account #6412;

f)      Shalea Holland account #1129;

g)      Courtney Flamer account #4607;

h)      TaHira Harper account #5011;

i)      Heather Fleming account #0516;

j)      Anwar Bilal account #4236;

k)      David Dillard account #4229;

l)      Rita Brown account #0734;

m)      Eugenia McBride account #4424;

n)      Lalisha Barrow account #8620.

o)      Champaine Echols account #2473;

p)      Darla Norman account #9483;

q)        Jasmyn Roberts account #3149.

13.      Verizon is re-aging Plaintiffs' accounts by changing their Date of Status date, as well as the "First Reported" date. EXPERIAN is allowing Verizon to re-age the Date of Status date, as well as the "First Reported" date.

14.      Verizon is providing credit information that is inaccurate and misleading and Experian is allowing them to report it.

15.      The "Date of Status" date on the Plaintiffs' credit reports should reflect the date when the account went uncollectible.

16.      The "First Reported" date is the first time an account is reported with EXPERIAN, and that date should never change.

17.      Verizon is falsely and misleadingly reporting the character and/or legal status of these alleged debts by re-aging the accounts.

18.      The "Date of Status" date should be the day the debt was deemed uncollectable. Verizon changes those dates to re-age the accounts and EXPERIAN allows Verizon to re-age the accounts by changing the "Date of Status" date. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 725 (S.D. Tex. 2013) ("'Date of Status' is a date that should mark the day a debt was deemed uncollectible and thus charged off." A creditor presented with Toliver's EXPERIAN credit report could reasonably interpret the "Date of Status" entry to mean exactly that")

19.      Re-aging accounts by changing the "Date of Status" date is misleading. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 727 (S.D. Tex. 2013) ("Date of Status" entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.")

20.    EXPERIAN should have discovered the misleading information if they would have provided a good faith reasonable investigation. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 732 (S.D. Tex. 2013) (Toliver's EXPERIAN credit reports contained a "Date of Status" that a reasonable jury could find misleading, and EXPERIAN "could have uncovered the inaccuracy 'if it had reasonably reinvestigated the matter.' " *DeAndrade,* 523 F.3d at 68 (quoting *Cushman,* 115 F.3d at 226))

21.    Verizon also changed the "First Reported" date and EXPERIAN allowed Verizon to change the "First Reported" date.  There is only one "First Reported" date. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.*, 973 F. Supp. 2d 707, 731 (S.D. Tex. 2013) ("First Reported" entry is meant to reflect the date that the creditor first reported the account to EXPERIAN. EXPERIAN should know this date).; *Please also see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 722 (S.D. Tex. 2013) (the "First reported" entry should reflect either the date that LVNV first reported the account on her credit report or the date that the debt was first reported as a major delinquency with Verizon, the original creditor.)

22.    These accounts are not only inaccurate, but also misleading, which the Fifth Circuit has addressed. The Fifth Circuit ruled that even a technical accuracy can be so misleading to the point that it is no longer accurate. *Please see Sepulvado vs. CSC Credit Services*, 158 F.3d 890, 895 (5th Cir. 1988), a consumer report is inaccurate if it is "misleading in such a way and to such an extent that it may be expected to adversely affect credit decisions."

23.    Verizon did not conduct a good faith and reasonable investigation, and did not delete or correct the false information, but instead re-aged the dates on the accounts and now EXPERIAN continues to report the inaccurate information with knowledge that there was no real investigation into its accuracy.

9

24.     The reporting of this credit information on Plaintiffs' credit reports negatively reflects upon the Plaintiffs, Plaintiffs' credit repayment history, Plaintiffs' financial responsibility as a debtor, and Plaintiffs' credit worthiness. This information was furnished by Verizon and reported by EXPERIAN, misrepresenting the payment history and/or status of Plaintiffs' accounts, and is currently being reported and is reflected on Plaintiffs' credit reports, resulting in lowering Plaintiffs' credit scores and furthering Plaintiffs' damages.

25.     Plaintiffs' credit reports and file have been obtained from credit reporting agencies and have been reviewed by known and unknown, prospective and existing credit grantors and extenders of credit, and the inaccurate information furnished by Verizon and reported by EXPERIAN is continuing to damage the Plaintiffs' credit ratings.

26.     As a result of conduct of EXPERIAN, Plaintiffs have suffered great physical, emotional, and mental pain and anguish, all to Plaintiffs' great detriment and loss.

27.     As a result of the conduct of Verizon, Plaintiffs have suffered actual damages, all to Plaintiffs' great detriment and loss.

28.     At all times pertinent hereto, Defendant was acting by and through their agents, servants, and/or employees, who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

29.     At all times pertinent hereto, the conduct of the Defendant, as well as that of their agents, servants, and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiffs herein.

**CAUSES OF ACTION**

30.     Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

31.     This suit is based upon the Defendant's violations of the Fair Credit Reporting Act. All causes of action were causes of the damages which Plaintiffs have suffered.

### *Count I: Fair Credit Reporting Act*

32.     Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

33.     This suit is brought against the Defendant as the damages made the basis of this suit were caused by their violation of the FCRA. In all instances of violating the FCRA, Defendant did so willfully and/or negligently. Under, 15 U.S.C. §1681n and 15 U.S.C. §1681o, the Plaintiffs are entitled to recover actual damages, punitive damages, and reasonable attorney's fees.

15 U.S.C. §1681n, "**Civil Liability for Willful Noncompliance**" reads:

>  (a)     Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

>>  (1)     any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1000

>>  (2)     such amount of punitive damages as the court may allow; and

>>  (3)     in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

And, 15 U.S.C. §1681o, "**Civil Liability for Negligent Noncompliance**" reads:

>  (a)     Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of:

>>  (1)     any actual damages sustained by the consumer as a result of the failure; and

>>  (2)     in the case of any successful action to enforce any liability under this section, the costs of the action with reasonable attorney's fees as determined by the court.

34.     EXPERIAN violated its duty under 15 U.S.C. §1681i(a)(1)(a) to conduct a good faith investigation into Plaintiffs' notice of dispute.

35.     Plaintiffs disputed information regarding their Verizon accounts with and through EXPERIAN on the following dates:

a)      Nikema Adger disputed their account #5673 on 05/04/2018;

b)      Nikema Adger disputed their account #6285 on 05/04/2018;

c)      Eliezar Mendez disputed their account #4169 on 10/05/2017;

d)      Richard Legree disputed their account #0100 on 10/23/2017;

e)      Jamar Myers disputed their account #6412 on 10/13/2017;

f)      Shalea Holland disputed their account #1129 on 07/27/2017;

g)      Courtney Flamer disputed their account #4607 on 10/04/2017;

h)      TaHira Harper disputed their account #5011 on 10/19/2017;

i)      Heather Fleming disputed their account #0516 on 10/27/2017;

j)      Anwar Bilal disputed their account #4236 on 12/18/2017;

k)      David Dillard disputed their account #4229 on 12/08/2017;

l)      Rita Brown disputed their account #0734 on 01/29/2017;

m)      Eugenia McBride disputed their account #4424 on 06/07/2018;

n)      Lalisha Barrow disputed their account #8620 on 08/24/2017;

o)      Champaine Echols disputed their account #2473 on 06/25/2018;

p)      Darla Norman disputed their account #9483 on 09/26/2017;

q)      Jasmyn Roberts disputed their account #3149 on 07/05/2018.

Plaintiffs disputed the inaccurate "Date of Status" and "First Reported/Reported Since" dates that were being reported on their EXPERIAN credit reports. Verizon and EXPERIAN did not

provide a good faith investigation into the disputed accounts as required by the Fair Credit Reporting Act.

36.     The Plaintiffs obtained new credit reports displaying the results of their disputes of their Verizon accounts on the following dates:

a)      Nikema Adger on 06/22/2018;

b)      Nikema Adger on 06/22/2018;

c)      Eliezar Mendez on 10/20/2017;

d)      Richard Legree on 11/15/2017;

e)      Jamar Myers on 11/01/2017;

f)      Shalea Holland on 08/22/2017;

g)      Courtney Flamer on 10/16/2017;

h)      TaHira Harper on 12/04/2017;

i)      Heather Fleming on 12/15/2017;

j)      Anwar Bilal on 02/19/2018;

k)      David Dillard on 01/24/2018;

l)      Rita Brown on 03/17/2018;

m)      Eugenia McBride on 07/27/2018;

n)      Lalisha Barrow on 09/18/2018;

o)      Champaine Echols on 10/28/2018;

p)      Darla Norman on 10/19/2017;

q)      Jasmyn Roberts on 11/05/2018.

37.     The Plaintiffs received their results on the dates listed above in the immediately preceding paragraph and not only did Verizon and EXPERIAN not correct, modify, or delete the

disputed information on Plaintiffs' Experian Credit Reports, but they changed the "Date of Status" and the "First Reported" dates due to Plaintiffs' disputes. The changes for the Plaintiffs were as follows:

a)      Nikema Adger dispute results showed their Date of Status dates changed from 09/2016 to 08/2016 and their First Reported dates changed from 05/2015 to 08/2016;

b)      Nikema Adger dispute results showed their Date of Status dates changed from 04/2017 to 05/2017;

c)      Eliezar Mendez dispute results showed their Date of Status dates changed from 08/2016 to 10/2017 and their First Reported dates changed from 07/2016 to 10/2017;

d)      Richard Legree dispute results showed their Date of Status dates changed from 04/2017 to 10/2017 and their First Reported dates changed from 04/2017 to 10/2017;

e)       Jamar Myers dispute results showed their Date of Status dates changed from 11/2016 to 10/2017 and their First Reported dates changed from 10/2016 to 10/2017;

f)      Shalea Holland dispute results showed their Date of Status dates changed from 08/2016 to 07/2017 and their First Reported dates changed from 08/2016 to 07/2017;

g)      Courtney Flamer dispute results showed their Date of Status dates changed from 02/2017 to 10/2017 and their First Reported dates changed from 02/2017 to 10/2017;

h)      TaHira Harper dispute results showed their Date of Status dates changed from 12/2016 to 11/2017 and their First Reported dates changed from 12/2016 to 11/2017;

i)      Heather Fleming dispute results showed their Date of Status dates changed from 10/2017 to 11/2017 and their First Reported dates changed from 02/2016 to 11/2017;

j)      Anwar Bilal dispute results showed their Date of Status dates changed from 11/2016 to 01/2018 and their First Reported dates changed from 07/2014 to 01/2018;

k)      David Dillard dispute results showed their Date of Status dates changed from 05/2017 to 01/2018 and their First Reported dates changed from 05/2017 to 12/2017;

l)      Rita Brown dispute results showed their Date of Status dates changed from 11/2017 to 12/2017 and their First Reported dates changed from 11/2017 to 12/2017;

m)      Eugenia McBride dispute results showed their Date of Status dates changed from 11/2017 to 01/2018 and their First Reported dates changed from 11/2017 to 01/2018;

n)       Lalisha Barrow dispute results showed their Date of Status dates changed from 03/2017 to 08/2017 and their First Reported dates changed from 03/2017 to 08/2017;

o)      Champaine Echols dispute results showed their Date of Status dates changed from 02/2018 to 04/2018 and their First Reported dates changed from 02/2018 to 03/2018;

p)      Darla Normans dispute results showed their Date of Status changed from 03/2017 to 09/2017 and their First Reported dates changed from 03/2017 to 09/2017;

q)      Jasmyn Roberts dispute results showed their Date of Status changed from 01/2018 to 02/2018 and their First Reported date changed from 12/2017 to 01/2018.

Verizon is changing dates that should not be changed, and EXPERIAN is allowing Verizon to change dates based on Plaintiffs' statutory right to dispute inaccurate credit information. Verizon and EXPERIAN are penalizing Plaintiffs for exercising their statutory right to dispute inaccurate information on their credit reports. Verizon and EXPERIAN are re-aging Plaintiffs' Verizon accounts with every dispute.

38.      The "Date of Status" date should be the day the debt was deemed uncollectable. Verizon changes those dates to re-age the accounts, and EXPERIAN allows Verizon to re-age the accounts by changing the "Date of Status" date. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 725 (S.D. Tex. 2013) ("'Date of Status' is a date that should mark the

15

day a debt was deemed uncollectible and thus charged off." A creditor presented with Toliver's EXPERIAN credit report could reasonably interpret the "Date of status" entry to mean exactly that")

39.     Re-aging accounts by changing the "Date of Status" date is misleading. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 727 (S.D. Tex. 2013) ("Date of Status" entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.")

40.     EXPERIAN should have discovered the misleading information if they would have provided a reasonably good faith investigation. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 732 (S.D. Tex. 2013)(Toliver's EXPERIAN credit reports contained a "Date of Status" that a reasonable jury could find misleading, and EXPERIAN "could have uncovered the inaccuracy 'if it had reasonably reinvestigated the matter.'" *DeAndrade,* 523 F.3d at 68 (quoting *Cushman,* 115 F.3d at 226).)

41.     Verizon also changed the "First Reported" date and EXPERIAN allowed Verizon to change the "First Reported" date. There is only one "First Reported" date. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.*, 973 F. Supp. 2d 707, 731 (S.D. Tex. 2013) ("First Reported" entry is meant to reflect the date that the creditor first reported the account to EXPERIAN. EXPERIAN should know this date.); *Please also see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 722 (S.D. Tex. 2013) (the "First reported" entry should reflect either the date that LVNV first reported the account on her credit report or the date that the debt was first reported as a major delinquency with Verizon, the original creditor.)

42.    If EXPERIAN would have conducted a reasonable and good faith investigation, they should have determined that Verizon was changing dates that should not be changed and providing them with inaccurate data.

The section entitled "**Procedure in Case of Disputed Accuracy**" under 15 U.S.C. §1681i(a)(1)(A) reads:

> (a)  Reinvestigations in case disputed information
>
>  (1) Reinvestigation required
>
> (A) In general-- Subject to subsection (f, if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30 day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

The re-aging and manipulating of the dates artificially lowered Plaintiffs' credit scores more than if the accounts were being reported accurately, as well as, making the accounts seem more recently delinquent than they really are to potential creditors, causing them damage.

43.    Plaintiffs disputed information regarding their Verizon accounts with and through EXPERIAN on the following dates:

a)    Nikema Adger disputed their account #5673 on 05/04/2018;

b)    Nikema Adger disputed their account #6285 on 05/04/2018;

c)    Eliezar Mendez disputed their account #4169 on 10/05/2017;

d)    Richard Legree disputed their account #0100 on 10/23/2017;

17

e)      Jamar Myers disputed their account #6412 on 10/13/2017;

f)      Shalea Holland disputed their account #1129 on 07/27/2017;

g)      Courtney Flamer disputed their account #4607 on 10/04/2017;

h)      TaHira Harper disputed their account #5011 on 10/19/2017;

i)      Heather Fleming disputed their account #0516 on 10/27/2017;

j)      Anwar Bilal disputed their account #4236 on 12/18/2017;

k)      David Dillard disputed their account #4229 on 12/08/2017;

l)      Rita Brown disputed their account #0734 on 01/29/2017;

m)      Eugenia McBride disputed their account #4424 on 06/07/2018;

n)      Lalisha Barrow disputed their account #8620 on 08/24/2017;

o)      Champaine Echols disputed their account #2473 on 06/25/2018;

p)      Darla Norman disputed their account #9483 on 09/26/2017;

q)      Jasmyn Roberts disputed their account #3149 on 07/05/2018.

44.     The Plaintiffs obtained new credit reports displaying the results of their disputes of their Verizon accounts on the following dates:

a)      Nikema Adger on 06/22/2018;

b)      Nikema Adger on 06/22/2018;

c)      Eliezar Mendez on 10/20/2017;

d)      Richard Legree on 11/15/2017;

e)      Jamar Myers on 11/01/2017;

f)      Shalea Holland on 08/22/2017;

g)      Courtney Flamer on 10/16/2017;

h)      TaHira Harper on 12/04/2017;

18

i)      Heather Fleming on 12/15/2017;

j)      Anwar Bilal on 02/19/2018;

k)      David Dillard on 01/24/2018;

l)      Rita Brown on 03/17/2018;

m)      Eugenia McBride on 07/27/2018;

n)      Lalisha Barrow on 09/18/2018;

o)      Champaine Echols on 10/28/2018;

p)      Darla Norman on 10/19/2017;

q)      Jasmyn Roberts on 11/05/2018.

45.      The Plaintiffs received their results on the dates listed above in the immediately preceding paragraph and not only did Verizon and EXPERIAN not correct, modify, or delete the disputed information on Plaintiffs' Experian Credit Reports, but they changed the "Date of Status" and the "First Reported" dates due to Plaintiffs' disputes. The changes for the Plaintiffs were as follows:

a)      Nikema Adger dispute results showed their Date of Status dates changed from 09/2016 to 08/2016 and their First Reported dates changed from 05/2015 to 08/2016;

b)      Nikema Adger dispute results showed their Date of Status dates changed from 04/2017 to 05/2017;

c)      Eliezar Mendez dispute results showed their Date of Status dates changed from 08/2016 to 10/2017 and their First Reported dates changed from 07/2016 to 10/2017;

d)      Richard Legree dispute results showed their Date of Status dates changed from 04/2017 to 10/2017 and their First Reported dates changed from 04/2017 to 10/2017;

e)      Jamar Myers dispute results showed their Date of Status dates changed from 11/2016 to 10/2017 and their First Reported dates changed from 10/2016 to 10/2017;

f)      Shalea Holland dispute results showed their Date of Status dates changed from 08/2016 to 07/2017 and their First Reported dates changed from 08/2016 to 07/2017;

g)      Courtney Flamer dispute results showed their Date of Status dates changed from 02/2017 to 10/2017 and their First Reported dates changed from 02/2017 to 10/2017;

h)      TaHira Harper dispute results showed their Date of Status dates changed from 12/2016 to 11/2017 and their First Reported dates changed from 12/2016 to 11/2017;

i)      Heather Fleming dispute results showed their Date of Status dates changed from 10/2017 to 11/2017 and their First Reported dates changed from 02/2016 to 11/2017;

j)      Anwar Bilal dispute results showed their Date of Status dates changed from 11/2016 to 01/2018 and their First Reported dates changed from 07/2014 to 01/2018;

k)      David Dillard dispute results showed their Date of Status dates changed from 05/2017 to 01/2018 and their First Reported dates changed from 05/2017 to 12/2017;

l)      Rita Brown dispute results showed their Date of Status dates changed from 11/2017 to 12/2017 and their First Reported dates changed from 11/2017 to 12/2017;

m)      Eugenia McBride dispute results showed their Date of Status dates changed from 11/2017 to 01/2018 and their First Reported dates changed from 11/2017 to 01/2018;

n)      Lalisha Barrow dispute results showed their Date of Status dates changed from 03/2017 to 08/2017 and their First Reported dates changed from 03/2017 to 08/2017;

o)      Champaine Echols dispute results showed their Date of Status dates changed from 02/2018 to 04/2018 and their First Reported dates changed from 02/2018 to 03/2018;

p)        Darla Normans dispute results showed their Date of Status changed from 03/2017 to 09/2017 and their First Reported dates changed from 03/2017 to 09/2017;

q)        Jasmyn Roberts dispute results showed their Date of Status changed from 01/2018 to 02/2018 and their First Reported date changed from 12/2017 to 01/2018.

Verizon is changing dates that should not be changed, and EXPERIAN is allowing Verizon to change dates based on Plaintiffs' statutory right to dispute inaccurate credit information. Verizon and EXPERIAN are penalizing Plaintiffs for exercising their statutory right to dispute inaccurate information on their credit reports. Verizon and EXPERIAN are re-aging Plaintiffs' Verizon accounts with every dispute.

46.        The "Date of Status" date should be the day the debt was deemed uncollectable. Verizon changes those dates to re-age the account and EXPERIAN allows Verizon to re-age the account by changing the "Date of Status" date. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 725 (S.D. Tex. 2013) ("'Date of Status' is a date that should mark the day a debt was deemed uncollectible and thus charged off." A creditor presented with Toliver's EXPERIAN credit report could reasonably interpret the "Date of status" entry to mean exactly that")

47.        Re-aging accounts by changing the "Date of Status" date is misleading. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 727 (S.D. Tex. 2013) ("Date of status" entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.")

48.        EXPERIAN and Verizon should have discovered the misleading information if they would have provided a good faith reasonable investigation. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 732 (S.D. Tex. 2013) (Toliver's EXPERIAN credit

reports contained a "Date of status" that a reasonable jury could find misleading, and EXPERIAN "could have uncovered the inaccuracy 'if it had reasonably reinvestigated the matter.' " *DeAndrade,* 523 F.3d at 68 (quoting *Cushman,* 115 F.3d at 226).)

49.    Verizon also changed the "First Reported" date and EXPERIAN allowed Verizon to change the "First Reported" date.  There is only one "First Reported" date. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.*, 973 F. Supp. 2d 707, 731 (S.D. Tex. 2013) ("First reported" entry is meant to reflect the date that the creditor first reported the account to EXPERIAN. EXPERIAN should know this date.); *Please also see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 722 (S.D. Tex. 2013) (the "First reported" entry should reflect either the date that LVNV first reported the account on her credit report or the date that the debt was first reported as a major delinquency with Verizon, the original creditor.)

50.    If EXPERIAN would have conducted a good faith reasonable investigation, they should have determined that Verizon was changing dates that should not be changed and providing the bureaus with inaccurate data.  The re-aging and manipulating of the dates artificially lowered Plaintiffs' credit scores more than if the accounts were being reported accurately, as well as making the accounts seem more recently delinquent than they really are to potential creditors, causing Plaintiffs damage.

> The section entitled "Duty of Furnishers of Information Upon Notice of Dispute"
> under 15 U.S.C. §1681s-2(b) reads:
>
> (1) After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute <u>with</u> regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall
>
> > (A)        conduct an investigation with respect to the disputed information:

(B)    review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C)    report the results of the investigation to the consumer reporting agency;

(D)    <u>if</u> the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

(E)    if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate based on the results of the reinvestigation promptly

(i)    modify that item of information
(ii)    delete that item of information
(iii)    permanently block the reporting that item of information

51.    EXPERIAN is currently violating 15 U.S.C. §1681e(b) by not following reasonable procedures to assure maximum possible accuracy. EXPERIAN is allowing Verizon to re-age both the "Date of Status" and "First Reported" dates to reflect more recent dates than legally accurate. If EXPERIAN had followed reasonable procedures to assure maximum accuracy, EXPERIAN would not be allowing Verizon to re-age two important data fields on Plaintiffs' credit files, and, even after the inaccurate reporting, EXPERIAN should have caught the inaccurate data once they were put on notice via Plaintiffs' disputes.

52.    Plaintiffs disputed information regarding their Verizon accounts with and through EXPERIAN on the following dates:

a)    Nikema Adger disputed their account #5673 on 05/04/2018;

b)    Nikema Adger disputed their account #6285 on 05/04/2018;

23

c)      Eliezar Mendez disputed their account #4169 on 10/05/2017;

d)      Richard Legree disputed their account #0100 on 10/23/2017;

e)      Jamar Myers disputed their account #6412 on 10/13/2017;

f)      Shalea Holland disputed their account #1129 on 07/27/2017;

g)      Courtney Flamer disputed their account #4607 on 10/04/2017;

h)      TaHira Harper disputed their account #5011 on 10/19/2017;

i)      Heather Fleming disputed their account #0516 on 10/27/2017;

j)      Anwar Bilal disputed their account #4236 on 12/18/2017;

k)      David Dillard disputed their account #4229 on 12/08/2017;

l)      Rita Brown disputed their account #0734 on 01/29/2017;

m)      Eugenia McBride disputed their account #4424 on 06/07/2018;

n)      Lalisha Barrow disputed their account #8620 on 08/24/2017;

o)      Champaine Echols disputed their account #2473 on 06/25/2018;

p)      Darla Normal disputed their account #9483 on 09/26/2017;

q)      Jasmyn Roberts disputed their account #3149 on 07/05/2018.

Plaintiffs disputed the inaccurate "Date of Status" and "First Reported/Reported Since" dates that were being reported on their EXPERIAN credit reports. Verizon and EXPERIAN did not provide a good faith investigation into the disputed accounts as required by the Fair Credit Reporting Act.

53.     The Plaintiffs obtained new credit reports displaying the results of their disputes of their Verizon accounts on the following dates:

a)      Nikema Adger on 06/22/2018;

b)      Nikema Adger on 06/22/2018;

c)      Eliezar Mendez on 10/20/2017;

d)      Richard Legree on 11/15/2017;

e)      Jamar Myers on 11/01/2017;

f)      Shalea Holland on 08/22/2017;

g)      Courtney Flamer on 10/16/2017;

h)      TaHira Harper on 12/04/2017;

i)      Heather Fleming on 12/15/2017;

j)      Anwar Bilal on 02/19/2018;

k)      David Dillard on 01/24/2018;

l)      Rita Brown on 03/17/2018;

m)      Eugenia McBride on 07/27/2018;

n)      Lalisha Barrow on 09/18/2018;

o)      Champaine Echols on 10/28/2018;

p)      Darla Norman on 10/19/2018;

q)      Jasmyn Roberts on 11/05/2018.

54.     The Plaintiffs received their results on the dates listed above in the immediately preceding paragraph and not only did Verizon and EXPERIAN not correct, modify, or delete the disputed information on Plaintiffs' Experian Credit Reports, but they changed the "Date of Status" and the "First Reported" dates due to Plaintiffs' disputes. The changes for the Plaintiffs were as follows:

a)      Nikema Adger dispute results showed their Date of Status dates changed from 09/2016 to 08/2016 and their First Reported dates changed from 05/2015 to 08/2016;

b)        Nikema Adger dispute results showed their Date of Status dates changed from 04/2017 to 05/2017;

c)        Eliezar Mendez dispute results showed their Date of Status dates changed from 08/2016 to 10/2017 and their First Reported dates changed from 07/2016 to 10/2017;

d)        Richard Legree dispute results showed their Date of Status dates changed from 04/2017 to 10/2017 and their First Reported dates changed from 04/2017 to 10/2017;

e)        Jamar Myers dispute results showed their Date of Status dates changed from 11/2016 to 10/2017 and their First Reported dates changed from 10/2016 to 10/2017;

f)        Shalea Holland dispute results showed their Date of Status dates changed from 08/2016 to 07/2017 and their First Reported dates changed from 08/2016 to 07/2017;

g)        Courtney Flamer dispute results showed their Date of Status dates changed from 02/2017 to 10/2017 and their First Reported dates changed from 02/2017 to 10/2017;

h)        TaHira Harper dispute results showed their Date of Status dates changed from 12/2016 to 11/2017 and their First Reported dates changed from 12/2016 to 11/2017;

i)        Heather Fleming dispute results showed their Date of Status dates changed from 10/2017 to 11/2017 and their First Reported dates changed from 02/2016 to 11/2017;

j)        Anwar Bilal dispute results showed their Date of Status dates changed from 11/2016 to 01/2018 and their First Reported dates changed from 07/2014 to 01/2018;

k)        David Dillard dispute results showed their Date of Status dates changed from 05/2017 to 01/2018 and their First Reported dates changed from 05/2017 to 12/2017;

l)        Rita Brown dispute results showed their Date of Status dates changed from 11/2017 to 12/2017 and their First Reported dates changed from 11/2017 to 12/2017;

m)      Eugenia McBride dispute results showed their Date of Status dates changed from 11/2017 to 01/2018 and their First Reported dates changed from 11/2017 to 01/2018;

n)       Lalisha Barrow dispute results showed their Date of Status dates changed from 03/2017 to 08/2017 and their First Reported dates changed from 03/2017 to 08/2017;

o)      Champaine Echols dispute results showed their Date of Status dates changed from 02/2018 to 04/2018 and their First Reported dates changed from 02/2018 to 03/2018;

p)      Darla Normans dispute results showed their Date of Status changed from 03/2017 to 09/2017 and their First Reported dates changed from 03/2017 to 09/2017;

q)      Jasmyn Roberts dispute results showed their Date of Status changed from 01/2018 to 02/2018 and their First Reported date changed from 12/2017 to 01/2018.

Verizon is changing dates that should not be changed, and EXPERIAN is allowing Verizon to change dates based on Plaintiffs' statutory right to dispute inaccurate credit information. Verizon and EXPERIAN are penalizing Plaintiffs for exercising their statutory right to dispute inaccurate information on their credit reports. Verizon and EXPERIAN are re-aging Plaintiffs' Verizon accounts with every dispute.

55.      The "Date of Status" date should be the day the debt was deemed uncollectable. Verizon changes those dates to re-age the account, and EXPERIAN allows Verizon to re-age the accounts by changing the "Date of Status" date. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 725 (S.D. Tex. 2013) ("'Date of Status' is a date that should mark the day a debt was deemed uncollectible and thus charged off." A creditor presented with Toliver's EXPERIAN credit report could reasonably interpret the "Date of Status" entry to mean exactly that")

56.      Re-aging accounts by changing the "Date of Status" date is misleading. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 727 (S.D. Tex. 2013) ("Date of Status" entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.")

57.      If EXPERIAN was following any much less reasonable procedures to assure maximum accuracy, they would not allow such inaccurate reporting, and, once they were put on notice via a dispute, they should have fixed or corrected the false and misleading information. EXPERIAN'S procedures are so bad or lacking that they continued to report obvious inaccurate data. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 732 (S.D. Tex. 2013) (Toliver's EXPERIAN credit reports contained a "Date of status" that a reasonable jury could find misleading, and EXPERIAN "could have uncovered the inaccuracy 'if it had reasonably reinvestigated the matter.' " *DeAndrade,* 523 F.3d at 68 (quoting *Cushman,* 115 F.3d at 226).)

58.      Verizon also changed the "First Reported" date and EXPERIAN allowed Verizon to change the "First Reported" date.  There is only one "First Reported" date. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 731 (S.D. Tex. 2013) ("First reported" entry is meant to reflect the date that the creditor first reported the account to EXPERIAN. EXPERIAN should know this date.); *Please also see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 722 (S.D. Tex. 2013) (the "First reported" entry should reflect either the date that LVNV first reported the account on her credit report or the date that the debt was first reported as a major delinquency with Verizon, the original creditor.)

59.      If EXPERIAN would have followed reasonable procedures to assure maximum accuracy, EXPERIAN would not have allowed Verizon to re-age and change the "Date of Status" and "First Reported" dates on Plaintiffs' credit report just because Plaintiffs exercised their

statutory right to dispute their accounts. The re-aging and manipulating of the dates artificially lowered Plaintiffs' credit score more than if the accounts were being reported accurately, as well as making the accounts seem more recently delinquent than they really are to potential creditors, causing Plaintiffs damage.

***Experian's standard is "maximum accuracy"***

Under 15 U.S.C. §1681e(b) reads:

> (b)   Accuracy of the Report
>
> Whenever a consumer reporting agency prepares a consumer report it <u>shall</u> follow reasonable procedures as assure maximum possible accuracy of the information concerning the individual about whom the report relates

60.      Experian must meet a very high standard for reporting accurate information on Consumers' credit files/credit reports. The Fair Credit Reporting Act (FCRA) requires "maximum accuracy" when reporting credit information on consumer's credit reports. Please see 15 USC §1681e(b); Please also see <u>Miller v. Trans Union, LLC</u>, 3:12-CV-1715, 2013 WL 5442008, at *5 (M.D. Pa. Aug. 14, 2013), <u>report and recommendation adopted in part,</u> 3:12-CV-01715, 2013 WL 5442059 (M.D. Pa. Sept. 27, 2013)(consistent with the broad remedial goals of the Act, it has been held that information which may be technically accurate may still give rise to liability under the FCRA if that information is misleading, since § 1681e(b) imposes a standard of "maximum possible accuracy" on credit reporting services. Often, "the distinction between 'accuracy' and 'maximum possible accuracy' is not nearly as subtle as may at first appear, it is in fact quite dramatic." *Cortez v. Trans Union,* LLC, 617 F.3d 688, 709 (3d Cir.2010).)

***Experian is required to conduct a reasonable investigation when consumers dispute credit information and delete information that is inaccurate, incomplete or cannot be verified, pursuant 15 U.S.C. §1681i***

61.    The Fair Credit Reporting Act requires Credit Reporting Agencies, such as Experian, to conduct a reasonable investigation when consumers dispute credit information. Please see 15 U.S.C. §1681i(a)(1)(A).  After a Credit Reporting Agency conducts a good faith and reasonable investigation, if the information is found to be inaccurate, incomplete, or cannot be verified, 15 U.S.C. §1681i requires the item to be deleted.  Please see Pinner v. Schmidt, 805 F.2d 1258, 1261–62 (5th Cir. 1986) (the FCRA imposes a duty upon reporting agencies to reinvestigate and to delete information found to be inaccurate or no longer verifiable once the consumer has protested the inclusion of the material. 15 U.S.C.A. § 1681i.).

62.    When an account is disputed by a consumer, Experian generates an "ACDV", which contains data and information on a consumer that is already "on profile" with Experian. The other half of the ACDV is blank, allowing the data furnisher to change/edit/modify/delete, or to continue to report the exact same information that Experian already has "on profile". After Experian receives the dispute from the consumer, Experian will send the ACDV, with Experian's "on profile" information to the data furnisher to review.  Once the data furnisher receives the ACDV, the data furnisher will fill out their side, instructing how to report the account, and then they will send back to Experian.

### *Experian has admitted they blatantly violate the Fair Credit Reporting Act (FCRA)*

63.    Experian has made shocking admissions in the past that their policies and procedures violate the FCRA.  They have admitted that they do not instruct their data furnishers on what to report and rely only on said data furnishers to report accurately without vetting the information on their own.

64.     Experian has admitted that they do not always investigate consumer's disputes. Experian will take the word of a data furnisher over the consumer because they have a "contract" with the data furnisher, and not with the consumer.

65.     Experian doesn't stop there with their shocking statements. Experian admits that they don't always vet the information that comes back from the data furnisher for accuracy because the data furnisher signs a contract with them. The FCRA mandates that Experian conduct an independent and reasonable investigation into the consumer's dispute, but they fall incredibly short of that standard by not even vetting the information they are receiving.

66.     This flies in the face of the FCRA requiring the credit reporting agencies to conduct a good faith and reasonable investigation into a consumer's dispute, as well as maintaining procedures to assure "maximum accuracy". Experian admitted that they will report anything that the data furnisher provides them because they have a "contract" with the data furnisher.  Experian would not tell a data furnisher what they are supposed to report based on a dispute by a consumer regardless of how inaccurate the information is that is being reported.  Experian usually only makes changes to the credit information at the direction of the data furnisher. Experian has rigged the system completely against all consumers wanting to dispute inaccurate information on their credit report for the purpose of removing or correcting it. Experian has admitted to only parroting (mimicking) information that the data furnisher provides them, which violates the FCRA.

*Parroting the information that Experian receives from the data furnisher is a "willful" violation*

67.     As argued above, Experian made shocking admissions that all they do is parrot the exact same information that the data furnishers give them in many cases. This is exactly what Experian did when Plaintiffs disputed the accounts at issue in this litigation with Experian.  That is not an investigation, it's a verification.  The case law is clear on this issue and it violates the Fair

Credit Reporting Act; Dixon-Rollins v. Experian Info. Sols., Inc., 753 F. Supp. 2d 452, 463 (E.D. Pa. 2010) (It was not unreasonable for the jury to conclude that Trans Union **willfully or recklessly violated the FCRA by doing nothing more than "parroting information"** it received from ACCB. *Cushman,* 115 F.3d at 225 ("[A] 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Campbell v. Chase Manhattan Bank, USA, N.A.,* No. 02–3489, 2005 WL 1514221, at *16 (D.N.J. June 27, 2005) **(parroting information received from original source may be considered a willful violation of the FCRA).** Thus, there is no basis to disturb the jury's finding that Trans Union willfully or recklessly failed to comply with the FCRA.); please also see Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997)(The "grave responsibility" imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a "reinvestigation" that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute.); please also see Pourfard v. Equifax Info. Services LLC, CIV 07-854-AA, 2010 WL 55446, at *4 (D. Or. Jan. 7, 2010) (However, "the caselaw is clear that a reporting agency does not act reasonably under the FCRA by deferring entirely to another source of information. The grave responsibility imposed by [the FCRA] must consist of something more than merely parroting information received from other sources." *Centuori v. Experian Info. Solutions, Inc.,* 431 F.Supp.2d 1002, 1008 (D.Ariz.2006) (citing *Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3rd Cir.1997)). "In a reinvestigation of the accuracy of credit reports [pursuant to § 1681i(a)], a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers." *Cushman,* 115 F.3d at 224 (internal citation omitted). In *Cushman,* the court expressly rejected the identical argument made here by defendant: the consumer must resolve the problem with the creditor. *Id.*

Rather, "[t]he statute places the burden of investigation squarely on" the consumer reporting agency. *Id.)*

### *Experian has the burden of investigating disputes*

68.     Experian is trying to shift the burden of the investigation to the data furnishers "because it is their data", which directly contradicts the FCRA. Please see Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997) (We also agree with the cogent observation by the Fifth Circuit that the plain language of the statute places the burden of reinvestigation on the consumer reporting agency. *See Stevenson,* 987 F.2d at 293. The FCRA evinces Congress's intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear "grave responsibilities," 15 U.S.C. § 1681(a)(4), to ensure the accuracy of that information. The "grave responsibility" imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a "reinvestigation" that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute.); please also see Sampson v. Equifax Info. Services, LLC, CIV.A. CV204-187, 2005 WL 2095092, at *5 (S.D. Ga. Aug. 29, 2005) (To the contrary, a credit reporting agency does not conduct a reasonable investigation by deferring entirely to another source of information. The "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3d Cir.1997). "In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers." *Stevenson,* 987 F.2d at 293. The FCRA "places the burden of investigation squarely on" the reporting agency. *Id.; see also Henson v. CSC Credit Servs.,* 29 F.3d 280, 286-87 (7th Cir.1994); *Swoager v. Credit*

*Bureau,* 608 F.Supp. 972, 976 (M.D.Fla.1985).); Please also see <u>Stevenson v. TRW Inc.</u>, 987 F.2d 288, 293 (5th Cir. 1993)(In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers. *See Swoager v. Credit Bureau of Greater St. Petersburg, Fla.,* 608 F.Supp. 972, 976 (M.D.Fla.1985).)

### Fifth Circuit:  Experian has the responsibility for evaluation the accuracy of the information obtained from Verizon

69.    The Fifth Circuit has ruled that Experian has the responsibility to evaluate the information that the date furnisher gives them. Please see <u>Stevenson v. TRW Inc.</u>, 987 F.2d 288, 293 (5th Cir. 1993) (In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers. *See Swoager v. Credit Bureau of Greater St. Petersburg, Fla.,* 608 F.Supp. 972, 976 (M.D.Fla.1985).)

70.    As argued above, Experian has made shocking confessions that they will report any information that data furnishers provide them because they have a "signed a contract" with them. That is the equivalent of putting the fox in the hen house. In Experian's own words, they have no oversight into the accuracy of the data they are receiving and reporting. To make matters worse, Experian will not correct/modify or delete the inaccurate information once the consumer disputes it if the data furnisher instructs them not to in most cases.

### Experian is responsible for the information in their files

71.    Experian is responsible for the information in their files. The plain language of the FCRA places the burden of reinvestigation on the consumer reporting agency.  *Please see Cortez v. Trans Union, LLC*, 617 F.3d 688, 710-11 (3d Cir. 2010) (**Trans Union remains responsible for the accuracy in its reports under the FCRA** and it cannot escape that responsibility as easily as it suggests here. Congress clearly intended to ensure that credit reporting agencies exercise care

when deciding to associate information with a given consumer, and the record clearly supports the jury's determination that Trans Union did not exercise sufficient care here. *See Philbin,* 101 F.3d at 966.); please also see <u>Saenz v. Trans Union, LLC</u>, 621 F. Supp. 2d 1074, 1083 (D. Or. 2007)(The plain language of the [FCRA] places the burden of reinvestigation on the consumer reporting agency. The FCRA evinces Congress's intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear "grave responsibilities," 15 U.S.C. § 1681(a)(4), to ensure the accuracy of that information. The "grave responsibility" imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. **Therefore, a "reinvestigation" that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute.** In addition to these observations, we note that [Trans Union]'s reading of § 1681i(a) would require it only to replicate the efforts it must undertake in order to comply with § 1681e(b). Such a reading would render the two sections largely duplicative of each other. We strive to avoid a result that would render statutory language superfluous, meaningless, or irrelevant.); please also see *Cortez v. Trans Union, LLC*, 617 F.3d 688, 710 (3d Cir. 2010)(**Congress surely did not intentionally weave an exception into the fabric of the FCRA that would destroy its remedial scheme by allowing a credit reporting agency to escape responsibility for its carelessness whenever misleading information finds its way into a credit report through the agency of a third party. Thus, Trans Union's argument that it does not control the accuracy of the SDN List is as misleading as the information it provided about Cortez**.).

### *ACDV not good enough to "investigate" consumer's disputes*

72.     When Plaintiffs disputed the Verizon account with Experian, Experian did not do anything other than to send a computerized form called an ACDV over to Verizon. The ACDV showed the information that Experian had "on profile" and asked Verizon to either verify the information, edit/modify, or remove/delete the account as Verizon deems necessary. Experian knew, because of their contract with Verizon, that they would report anything Verizon provides to them.

73.     Experian has already had a ruling against them for not going beyond the ACDV regarding this exact same issue as being alleged in this case. In *Toliver*, Experian changed Toliver's "First Reported" and "Date of Status" dates each time she disputed the account. Please see Toliver v. Experian Info. Sols., Inc., 973 F. Supp. 2d 707, 731 (S.D. Tex. 2013)(Going beyond LVNV's response to the ACDVs in this case may not have involved much more than comparing the date to Experian's own records or clarifying the meaning of the "First reported" entry to LVNV and asking for a response that accurately reflected the date that the account was first reported to Experian. The evidence produced suggests that LVNV updated the "First reported" entry at least as often as Toliver disputed the accuracy of the LVNV account. A reasonable jury could conclude that Experian should have known that an account being disputed by the consumer could not have been "First reported" on the date that the creditor replied to its ACDVs. Thus, Experian is not entitled to summary judgment on Toliver's § 1681i(a) claims regarding the "First reported" entry.).

74.  The Fifth Circuit, District Courts in Texas, as well as federal courts across the country have ruled that relying on the ACDV is not an investigation.  Please see Stevenson v. TRW Inc., 987 F.2d 288, 293 **(5th Cir. 1993)** (**TRW relied solely on the CDVs despite the number of disputed accounts and the allegations of fraud. TRW also relied on the subscribers to tell TRW whether to delete information from Stevenson's report. In a reinvestigation of the**

**accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers.** *See Swoager v. Credit Bureau of Greater St. Petersburg, Fla.,* 608 F.Supp. 972, 976 (M.D.Fla.1985).); please also see <u>Pace v. Experian Info. Sols. Inc.</u>, CIV.A. 2:03-CV-45, 2004 WL 1057795, at *2 (E.D. Tex. Apr. 28, 2004) (**When a credit reporting agency receives notice of inaccurate information from a consumer, § 1681i(a) imposes a duty on the agency to reinvestigate the accuracy of the information. In this circuit, the law is clear that "in a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers." *Stevenson v. TRW, Inc.,* 987 F.2d 288 (5th Cir.1998)(affirming finding of negligence where credit reporting agency relied exclusively on consumer dispute verification forms (CDVs) when discharging its reinvestigation duties**); please also see <u>Zala v. Trans Union, LLC</u>, CIV. A. 3:99-CV-0399, 2001 WL 210693, at *5 (**N.D. Tex. Jan. 17, 2001)(In *Stevenson v. TRW Inc.,* 987 F.2d 288, 293 (5th Cir.1993), the Fifth Circuit held that a consumer reporting agency that relied solely on subscribers' written consumer dispute verification forms rather than contacting the subscribers directly was negligent.** The court noted that even though the credit agency was unable to verify some disputed accounts, it failed to remove those disputed accounts from the credit report. *Id.* **Rejecting as insufficient the credit agency's practice of relying on the consumer to resolve the problem with the creditor, the court stated that "[i]n a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers." *Id.***). Courts across the country have also ruled that relying only on ACDVs does not constitute an investigation into consumer's disputes. please also see <u>White v. Trans Union, LLC</u>, 462 F. Supp. 2d 1079, 1083 (C.D. Cal. 2006)(TransUnion **seeks to deflect responsibility for this**

**inaccuracy to the creditors** upon whom it relies for information and falls back on its assertion that **"a creditor is in a better position than a consumer reporting agency with regard to the ability to detect and correct errors in the reporting of a consumer's account**." Def.'s Mot. to Dismiss Pls.' Second Am. Consolidated Class Comp. 13:12-14. **This hardly suffices to establish, as a matter of law, that a "reasonable reinvestigation" amounts to an inquiry that goes only to confirmation of the accuracy of information from its original source**. *Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3d Cir.1997) ("The 'grave responsibility' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *see also Henson v. CSC Credit Servs.,* 29 F.3d 280, 286-87 (7th Cir.1994); *Stevenson v. TRW, Inc.,* 987 F.2d 288, 293 (5th Cir.1993); *McKeown v. Sears Roebuck & Co.,* 335 F.Supp.2d 917, 930 (W.D.Wis.2004); please also see Dixon-Rollins v. Experian Info. Sols., Inc., 753 F. Supp. 2d 452, 465 (E.D. Pa. 2010) (**the Third Circuit instructed Trans Union that it may not just repeat information it receives from the original source but must do more to verify the credit information.** *Cushman,* 115 F.3d at 225. Since *Cushman* was decided, Trans Union has been repeatedly warned of its statutorily required obligation in conducting a reinvestigation, *see e.g., Krajewski,* 557 F.Supp.2d at 616; *Crane,* 282 F.Supp.2d at 320; *Lawrence,* 296 F.Supp.2d at 589; *Saenz v. Trans Union, LLC,* 621 F.Supp.2d 1074, 1083 (D.Or.2007) (**Trans Union must do more than parrot information received by original source**); *Lambert v. Beneficial Mortgage Corp.,* No 05–5468, 2007 WL 1309542, at *2 (W.D.Wash. May 7, 2007) (in certain circumstances a consumer reporting agency may need to verify the accuracy of its initial source of information) (citations omitted), and found liable for noncompliance. *See, e.g., Mullins v. Equifax Info. Servs., LLC,* No. 05–888, 2007 WL

2471080, at *7 n. 11 (E.D.Va. Aug. 27, 2007).[7] Thus, because Trans Union has been **warned of its inadequate reinvestigation practices in prior cases, it may be considered a repeat FCRA offender**. *See Willow Inn, Inc. v. Public Serv. Mut. Ins. Co.,* 399 F.3d 224, 232 (3d Cir.2005) (recidivist behavior relates to defendant's conduct as to non-parties). **Trans Union's refusal to modify its reinvestigation procedures and insistence on mimicking the original sources' responses supports the conclusion that punitive damages are necessary to deter future violations**. "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that **strong medicine is required to cure the defendant's disrespect for the law**." *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 576–77, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Thus, **because Trans Union has continued to disregard its obligations despite clear judicial rulings and warnings, its conduct is more reprehensible than that of a first- time offender, requiring more severe punishment**. *Id.* at 577, 116 S.Ct. 1589.); please see <u>Grigoryan v. Experian Info. Sols., Inc.</u>, 84 F. Supp. 3d 1044, 1074–75 (C.D. Cal. 2014)(It is well settled that exclusive reliance on ACDV procedures does not suffice, as a matter of law, to establish that a "reasonable investigation" took place once a consumer disputes the accuracy of the furnisher's information. See *Bradshaw v. BAC Home Loans Servicing, LP,* 816 F.Supp.2d 1066, 1073–74 (D.Or.2011) ("Many courts, including this one, have concluded that where a CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of law for the agency to simply verify the creditor's information through the ACDV process without additional investigation"); *White v. Trans *1075 Union, LLC,* 462 F.Supp.2d 1079, 1083 (C.D.Cal.2006) ("TransUnion seeks to deflect responsibility for this inaccuracy to the creditors upon whom it relies for information and falls back on its assertion that 'a creditor is in a better position than a consumer reporting agency

with regard to the ability to detect and correct errors in the reporting of a consumer's account.' ... This hardly suffices to establish, as a matter of law, that a 'reasonable reinvestigation' amounts to an inquiry that goes only to confirmation of the accuracy of information from its original source"); see also *Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3d Cir.1997) ("The 'grave responsibility' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources"); *Apodaca v. Discover Fin. Servs.,* 417 F.Supp.2d 1220, 1230–31 (D.N.M.2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed).

### *Willful*

75.    To prove willful, Plaintiffs only have to show that Experian was reckless, malice is not needed. please see <u>Hedlund v. Hooters of Houston</u>, CIV.A.2:08-CV-45, 2008 WL 2065852, at *3 (N.D. Tex. May 13, 2008) (**The Supreme Court has held that "willful", as used in the FCRA, includes a knowing or reckless disregard of the law.** *Safeco Ins. Co. of America v. Burr,* --- U.S. ----, ----, 127 S.Ct. 2201, 2208, 167 L.Ed.2d 1045 (2007). Plaintiff has met their burden under Rule 12(b)(6). ); please also see <u>Cousin v. Trans Union Corp.</u>, 246 F.3d 359 (5th Cir. 2001)(Malice or evil motive need not be established for a punitive damages award under Fair Credit Reporting Act (FCRA), but the violation must have been willful. Consumer Credit Protection Act, § 616(a)(2), as amended, 15 U.S.C.A. § 1681n(a)(2).)

76.    With Experian's shocking admissions of their over the top failure to comply with any part of the FCRA and their flagrant systematic disregard to the federal laws that Congress created to assure that consumers have accurate credit reports is as intentional as it gets, and at a bare minimum, "reckless". Experian completely lacks any resemblance of having procedures and

policies that would assure any form of accuracy, much less their required standard of "maximum accuracy". Experian willfully violated their statutory obligation to provide a reasonable investigation into Plaintiffs' disputes, pursuant to 15 U.S.C. §1681i. Experian willfully violated their statutory duty to follow procedures to assure "maximum accuracy", as well as their failure to conduct a good faith reasonable investigation.

### Fifth Circuit Standard of Inaccuracy

77.    The Fifth Circuit has ruled directly on what can make a credit entry inaccurate. The Fifth Circuit standard of an inaccurate credit entry is that it can be "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions". It is interesting to note that the Fifth Circuit standard is that if it "can" adversely affect credit decisions, not that it did adversely affect credit decisions.  *Please see Sepulvado vs. CSC Credit Services*, 158 F.3d 890, 895-96 (5th Cir. 1988) (A credit entry may be "inaccurate" within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions".); please also see Saunders v. Branch Banking & Tr. Co. Of VA, 526 F.3d 142, 148–49 (4th Cir. 2008) (Of particular relevance here, in *Dalton* we addressed the duty of a CRA to report accurately pursuant to § 1681e. 257 F.3d at 415. We held that a report "is inaccurate" not only "when it is 'patently incorrect' " but also "when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse[ ]' effect." *Id.* (quoting *Sepulvado v. CSC Credit Servs.,* 158 F.3d 890, 895 (5th Cir.1998)). Thus, we held that a consumer report that contains technically accurate information may be deemed "inaccurate" if the statement is presented in such a way that it creates a misleading impression. *See id.* at 415–16. The Fifth Circuit reached a similar conclusion, affirming a jury verdict finding a CRA's report inaccurate when the report described an account as

"[l]itigation [p]ending," because the report omitted the fact that the consumer, as opposed to the creditor/furnisher, had *149 brought suit. *See Pinner v. Schmidt,* 805 F.2d 1258, 1262–63 (5th Cir.1986).)).

78.    Experian is reporting "First Reported" and "Date of Status" dates that they know are not only false and inaccurate on their face, but that are also misleading.

79.    There isn't any way that Experian's reporting of re-aged dates could ever be deemed accurate, using ether the patently inaccurate or misleading standard. Experian has been on notice since 2013 of their reporting problems.

80.    Experian has been on notice of their flawed policies and procedures of re-aging accounts since *Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 732 (S.D. Tex. 2013), however they have failed to fix or correct.

81.    Experian cannot deny that they allowed the "First Reported" and the "Date of Status" dates to improperly and illegally re-age, just because the Plaintiffs disputed their accounts. Furthermore, Experian has let Verizon change the "Date of Status" and "First Reported" dates on thousands, if not hundreds of thousands of consumers' credit reports across the United States. This means Experian has no reasonable procedure in place to prevent Verizon from incorrectly changing consumers' "Date of Status" and "First Reported" dates on a monthly basis to affect consumers' credit scores negatively. This is far from a reasonable procedure to ensure "maximum accuracy".

82.    The conduct of EXPERIAN was the direct and proximate cause, as well as a substantial factor in bringing about the serious injuries, damages, and harm to Plaintiffs that are outlined above. As a result, Defendant is liable to compensate Plaintiffs for the full amount of

actual, statutory, compensatory, and punitive damages, as well as such other relief, permitted by law.

83.    As a result of Defendant's conduct, Plaintiffs have suffered emotional and mental pain and anguish, and all to Plaintiffs' great detriment and loss.

84.    As a result of Defendant's conduct, Plaintiffs have suffered actual damages that are all to Plaintiffs' great detriment and loss.

85.    At all times pertinent hereto, Defendant was acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

86.    At all times pertinent hereto, the conduct of the Defendant, as well as that of their agents, servants, and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiffs herein.

## DEMAND FOR JURY TRIAL

87.    Plaintiffs demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs seeks judgment in Plaintiffs' favor and damages against the Defendant EXPERIAN based on the following requested relief:

(a)    Actual damages pursuant to 15 U.S.C. §1681

(b)    Statutory damages pursuant to 15 U.S.C. §1681

(c)    Punitive damages pursuant to 15 U.S.C. §1681

(d)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681n, §1681o

(e)     Such other and further relief as may be necessary, just, and proper.

Dated:  August 30, 2019

Respectfully submitted,

/s/Jonathan Raburn
Jonathan Raburn
ATTORNEY FOR PLAINTIFF
Louisiana Bar Roll No. 28728
McCarty & Raburn, A Consumer Law Firm, PLLC
2931 Ridge Rd, Suite 101 #504
Rockwall, TX 75032
jonathan@geauxlaw.com
Telephone: 225-412-2777


/s/ Dennis McCarty
Dennis McCarty
ATTORNEY FOR PLAINTIFF
Mississippi Bar No. 102733
Federal Bar No. 993800
McCarty & Raburn, A Consumer Law Firm, PLLC
2931 Ridge Rd, Suite 101 #504
Rockwall, TX 75032
dennismccartylaw@gmail.com
Telephone: 817-704-3375
Fax (817) 887-5069